# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-258 (KBJ) |
| | ) | |
| SEAN RAY WIGGINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

With more than forty detainees in the D.C. Jail reportedly testing positive for the new coronavirus, it is now regrettably clear that COVID-19 has struck the District of Columbia's Department of Corrections ("D.C. DOC") with full force.[1] The obvious increased risk of harm that the COVID-19 pandemic poses to individuals who have been detained in the District's correctional facilities reasonably suggests that each and every criminal defendant who is currently in D.C. DOC custody—and who thus cannot take independent measures to control their own hygiene and distance themselves from others—should be released. But the unfortunate current state of affairs is that the judiciary is limited in the steps that it can take to respond to the legitimate and pressing COVID-19-related concerns that myriad defense counsel have raised in the numerous emergency motions that have recently been filed in this jurisdiction. And, in this Court's view, the constraints on judicial authority derive both from the fact that

---

[1] *Compare 41 DC Inmates Have Tested Positive for Coronavirus*, NBC Wash. (Apr. 9, 2020), https://perma.cc/TH8M-CBQH (noting that "[a] total of 41 inmates in Washington, D.C., have tested positive for coronavirus" as of the evening of April 9, 2020) *with United States v. Davis*, No. 19-cr-292, ECF No. 157 at 2 (D.D.C. Apr. 6, 2020) ("On April 6, 2020, the Court was informed that twenty inmates at the D.C. Jail have now tested positive.").

existing statutes mandate an individualized assessment of a detained person's flight risk and dangerousness prior to such person's release into the community, and also from the recognition that the act of releasing dangerous and/or potentially non-compliant criminal defendants into the community itself poses substantial risks to probation officers, law enforcement, and the public at large.

Before this Court at present is defendant Sean Ray Wiggins's "Emergency Motion For A Hearing To Address The Impact Of The COVID-19 Pandemic On The Defendant's Safety And For Possible Release To Home Confinement Pending Sentencing." (*See* Emergency Mot. for Bond Hr'g ("Def.'s Mot."), ECF No. 95.) Like other defendants before him, Wiggins argues that "the existence of the COVID-19 pandemic, and its effects on our communities, including the jail community, constitutes new information sufficient for emergency reconsideration of [Wiggins's] continued detention in this case[.]" (Def.'s Mot. at 11.) For its part, the government acknowledges the dangers of COVID-19, but opposes Wiggins's request for release nonetheless, largely for the same reasons that it proffered during the Court's prior consideration of whether there were any conditions that could ensure the safety of people in the community if Wiggins was released pretrial. (*See generally* Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), ECF No. 96; *see also* Def.'s Reply to Gov't Opp'n ("Def.'s Reply"), ECF No. 97.) Specifically, the government contends that Wiggins is a danger to the community, because he has been charged with (and has now pled guilty to) actively participating at a high level in a large heroin trafficking conspiracy; there is substantial evidence that Wiggins also maintained a separate (albeit uncharged) cocaine trafficking operation; and there were a significant number of firearm magazines, high-

caliber bullets, and other types of ammunition found in Wiggins's residence at the time of his arrest. (*See* Gov't Opp'n at 7–8 (incorporating by reference the government's prior arguments for pretrial detention under 18 U.S.C. § 3142(g) (citing Gov't Mem. for Pretrial Detention, ECF No. 18 at 18)).)

Notably, while this Court previously indicated that its decision regarding whether or not Wiggins should be detained pretrial was "a close call" in light of his limited criminal history and significant family ties (*see* Hr'g Tr. ("Detention Review Hr'g"), ECF No. 39 at 2), it ultimately determined that the government had established that Wiggins was a danger to the community within the meaning of the Bail Reform Act such that his pretrial detention was required (*id.* at 8). And, for the reasons explained below, nothing about the COVID-19 pandemic alters the Court's analysis in this regard. Therefore, even if the Court assumes that COVID-19 is an "exceptional reason[] why [Wiggins's] detention would not be appropriate," 18 U.S.C. § 3145(c), it cannot presently conclude that Wiggins has met the conditions of release under 18 U.S.C. § 3143(a)(1), which is a statutory prerequisite to the exercise of the Court's authority under section 3145(c) to release convicted defendants who have been mandatorily detained. Consequently, Wiggins's emergency motion for release must be **DENIED**.

## I.

In December of 2017, the Federal Bureau of Investigation ("FBI") began investigating the illegal distribution of heroin in the Fort Totten area of Washington, D.C. (*See* Stmt. of the Offense, ECF No. 91 at 3.) During this long-term investigation—which included surveillance, controlled purchases, and Title III wiretaps—law enforcement focused on George Allen Weaver, Jr.'s drug-trafficking

operation, which primarily brought heroin into the region through a redistribution network that included Michael David Smith. (*See id.* at 4.) From November of 2018 until July of 2019, Wiggins assisted Weaver in his narcotics trafficking by supplying heroin to Weaver's redistribution network when Weaver was unavailable or out of town. (*See id.*) For instance, in November of 2018, an undercover law enforcement officer requested to purchase from Smith 100 grams of heroin, which was to be supplied by Weaver, but the officer cancelled the transaction, and Weaver then asked Wiggins to meet him at Smith's residence. (*See id.*) Weaver explained that he was leaving the area for a few days, and he left the stash of heroin with Wiggins, so that Wiggins could continue making drug sales in Weaver's absence. (*See id.*) And Wiggins apparently did so: when Smith contacted Wiggins shortly thereafter to request heroin for his customers, Wiggins provided some of the drug to Smith for this purpose. (*See id.*)

On July 31, 2019, the FBI obtained a grand jury indictment, charging Weaver and other suspected co-conspirators—including Wiggins—with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. (*See* Indictment, ECF No. 1 at 3.) Wiggins was arrested on August 1, 2019. (*See* Arrest Warrant, ECF No. 6.) That same day, federal agents executed a search warrant at Wiggins's residence, during which they uncovered multiple firearm magazines and ammunition, a digital scale, a telephone, and a large amount of cash. (*See* Gov't Mem. for Pretrial Detention, ECF No. 18 at 18.)

Four days later, on August 5, 2019, the government filed a motion to have Wiggins detained prior to trial, arguing that the charged offense created a rebuttable presumption that no conditions of release will reasonably ensure public safety. (*See id.*

at 25 (citing 18 U.S.C. § 3142(f)(1)(C)).) Magistrate Judge G. Michael Harvey held a detention hearing on August 6, 2019, during which he determined that Wiggins had successfully rebutted the presumption in favor of pretrial detention, because any drug trafficking that Wiggins was involved in was "nowhere near as significant as that which Mr. Weaver is engaging in" and, in his view, there was "no evidence that [Wiggins] actually sold anything" while he was standing in for Weaver. (*See* Hr'g Tr. ("Detention Hr'g"), ECF No. 32 at 41.)

The government immediately requested review of the Magistrate Judge's decision to release Wiggins under high-intensity supervision (*see* Minute Entry of Aug. 6, 2019), and this Court held another hearing concerning Wiggins's detention status on August 13, 2019 (*see* Minute Entry of Aug. 13, 2019). Upon consideration of the parties' arguments, the Court ultimately concluded that, while Wiggins had done enough to rebut the statutory presumption in favor of detention that is based on the charged offense, the government had shown, by clear and convincing evidence, that "no conditions of release, including HISP, will reasonably assure the safety of the community[.]" (Detention Review Hr'g at 8.) In particular, the Court noted that the fact that Wiggins was a "part-time high-level drug dealer" and the fact that "the illegal conduct [was] not his sole or even primary occupation" did not, in themselves, weigh in favor of his release. (*Id.* at 11.) Moreover, the Court found that the weight of the evidence favored detention, because the government had "proffered intercepted phone conversations" that evidenced drug trafficking and that "were traced directly to Mr. Wiggins's phone" (*id.*), as well as "evidence that place[d] [Wiggins] in the proximity of illegal drugs at various times beyond the charged offense" (*id.* at 12). Additionally,

while the Court concluded that "Mr. Wiggins's family ties, length of residence in the community, and lack of criminal history . . . weigh in favor of release" (*id.* at 13), it also found that there was "strong evidence linking [Wiggins] to illegal drug trafficking conduct both in this case and on his own" (*id.* at 14), as well as evidence that Wiggins "possessed a substantial number of dangerous [am]munitions" at the time of his arrest (*id.* at 15), both of which suggested that Wiggins's release would threaten the safety of the community (*id.*). Thus, the Court ordered that Wiggins was to be detained pending trial. (*Id.* at 18.)

Wiggins subsequently pled guilty to a superseding information that charged him with unlawful possession with the intent to distribute a detectable amount of heroin. (*See* Superseding Information, ECF No. 83.) Wiggins has now filed the instant emergency motion for release from custody, in which he argues that he should be released pending sentencing due to "the existence of the COVID-19 pandemic, and its effects on our communities, including the jail community[.]" (Def.'s Mot. at 11). According to Wiggins's motion, "[a]t a minimum, it appears that it would be appropriate for Mr. Wiggins to be released to home detention until the resolution of this [COVID-19] outbreak" (*id.* at 2), and that he should be placed on high intensity supervision in the custody of "his girlfriend at her parents' home" (*id.* at 12), because "[i]t is indisputable that we are experiencing unprecedented and exceptional circumstances—both in the community and in the jails" (*id.* at 13).

Significantly for present purposes, Wiggins's motion conflates the statutory standards that are applicable to a detained defendant's requests for release; for example, his arguments rely on *both* the Bail Reform Act, which applies to pretrial detainees, *and*

the statutory provisions that govern motions by post-conviction defendants who are awaiting sentencing (like Wiggins). However, insofar as Wiggins has pled guilty and his motion suggests that the outbreak of COVID-19 and the heightened risk of contracting the disease in jail are exceptional reasons that make his release appropriate, Wiggins's emergency request for release is properly construed as a motion for release from detention pending sentencing pursuant to 18 U.S.C. § 3145(c). *See also, e.g.*, *United States v. Dixon*, No. 20-cr-88, 2020 WL 1700001, at *1 (S.D.N.Y. Apr. 7, 2020) (construing a similar request based on the COVID-19 pandemic as a motion pursuant to section 3145(c)).

## II.

Wiggins's emergency motion for release must be evaluated in accordance with Congress's intent as expressed in the statutory provisions that govern a district court's authority to detain and/or release criminal defendants at various stages of the criminal justice process. To begin with, it is clear beyond cavil that, before a guilty plea or conviction, "liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, the Bail Reform Act provides that a criminal defendant can be detained before trial *only* if, "after a hearing[,]" the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). That statute further prescribes that, to make this determination, a court must evaluate four factors in the first instance: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics" of the

defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id*. § 3142(g). Consequently, a criminal defendant can only be detained pending trial consistent with the Bail Reform Act if, on balance, those four factors weigh in favor of detention, such that the court can confidently conclude that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *Id*. § 3142(e)(1); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) ("In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'")[2]

Once a defendant is convicted of an offense, a different detention statute, with different presumptions, applies—namely, 18 U.S.C. § 3143. In this circumstance, far from promoting liberty, a court is generally required *to detain* the defendant as the background rule, and, notably, this detention requirement comes in two varieties: there is either (1) a presumption of detention that a defendant can rebut with "clear and convincing evidence" that he "is not likely to flee or pose a danger to the safety of any other person or the community if released" under 18 U.S.C. § 3143(a)(1), or (2) mandatory detention for defendants who have been convicted of specified crimes, except in certain very narrow circumstances, under 18 U.S.C. § 3143(a)(2).[3] It is

---

[2] This is not to suggest that the government must always proffer evidence concerning all four factors with respect to every detained defendant in the first instance. With respect to defendants who have been charged with certain offenses—including offenses under the Controlled Substances Act which carry a maximum term of imprisonment of ten years or more—a rebuttable *presumption* of dangerousness arises, 18 U.S.C. § 3142(e)(2)–(3), which "operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption[,]" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in the original).

[3] To release a defendant who faces mandatory detention pending sentencing under 18 U.S.C. § 3142(a)(2), the judicial officer must find either that "there is a substantial likelihood that a motion for

reasonably clear that section 3143(a)(1) requires a court to make the same flight risk and dangerousness assessment that the Bail Reform Act requires, *see United States v. Weekes*, No. 13-cr-187, 2013 WL 6571598, at *1 (D.D.C. Dec. 13, 2013), only, now, detention is presumed, and it is the defendant's burden to convince the court that he satisfies the non-dangerousness and no-flight-risk conditions of release, *see* 18 U.S.C. § 3143(a)(1). By contrast, per section 3143(a)(2), defendants who have been convicted of certain offenses for which a maximum sentence of 10 or more years of imprisonment is prescribed—such as Wiggins—have no such opportunity to secure release by rebutting the presumption of detention at the time of their conviction; instead, they ordinarily *must* be detained pending sentencing. *See* 18 U.S.C. 3143(a)(2).

Importantly, there appears to be one additional escape hatch for a defendant who is subject to mandatory detention pending sentencing under section 3143(a)(2): the statutory provision that is codified at 18 U.S.C. § 3145(c). In relevant part, section 3145(c) provides that

> [a] person subject to detention pursuant to section 3143(a)(2) . . . , and who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

*Id*. § 3145(c). Thus, section 3145(c) permits the court to release "under appropriate conditions" detainees who satisfy three criteria. First, the detainee must be a person who is, or was, "subject to detention pursuant to section 3143(a)(2)"; second, the

---

acquittal or new trial will be granted" or that "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person[,]" *and also* further find, "by clear and convincing evidence[,] that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

detained must "meet[] the conditions of release set forth in section 3143(a)(1)"; and third, the detainee must "clearly show[] that there are exceptional reasons why [his] detention would not be appropriate." *Id.*

In the instant case, there is no dispute that Wiggins is a defendant who is awaiting trial after his plea of guilty with respect to a crime that made him subject to mandatory detention under section 3143(a)(2).[4] Therefore, this Court's assessment of Wiggins's emergency request for release turns on whether Wiggins "meets the conditions of release set forth in section 3143(a)(1)[,]" and has "clearly shown that there are exceptional reasons why [his] detention would not be appropriate." *Id.* § 3145(c).

Before the Court addresses that analysis, three other points are worth noting. First, in this Court's view, the government's contention that district judges lack the authority to release defendants under section 3145(c) (*see* Govt.'s Opp'n at 4–5) is mistaken. That is, the Court agrees with Wiggins (*see* Def.'s Reply at 2–3) that the plain text of section 3145(c) establishes that a district judge who has jurisdiction over a defendant's criminal case qualifies as the "judicial officer" who may order the

---

[4] Wiggins qualifies as such because he pled guilty on March 2, 2020, pursuant to a plea agreement that is wired to the guilty plea of one of his co-defendants, George Allen Weaver, Jr. (*see* Plea Agreement, ECF No. 90), and this Court entered his guilty plea. During the plea hearing that the Court conducted, both Wiggins and Weaver admitted to their criminal conduct, and, in particular, Wiggins pled guilty to conspiracy to distribute and possess with intent to distribute a detectable amount of heroin, in violation 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, which carries a maximum sentence of 20 years of incarceration. (*See* Minute Entry of Mar. 2, 2020.) The Court deferred its agreement to impose the binding sentence contained in Weaver's plea agreement, which was drafted pursuant to Fed. R. Crim. P. 11(c)(1)(C), in order to permit the Court to review the not-yet-issued presentence investigation report as confirmation that the binding sentence in Weaver's plea agreement is reasonable. (*See* Minute Entry of Mar. 2, 2020.) But as of now, by virtue of the entry of his guilty plea and for purposes of his detention status, Wiggins "has been found guilty of an offense in a case described in subparagraph . . . (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence[.]" 18 U.S.C. § 3143(a)(2).

defendant released.  *See* 18 U.S.C. § 3156(a)(1) (defining generally the term "judicial

officer" for the purpose of 18 U.S.C. §§ 3141–3150 to mean "any person or court

authorized . . . to detain or release a person before trial or sentencing or pending appeal

in a court of the United States").  The weight of authority specifically holds as much,

and this is so notwithstanding the fact that the first part of section 3145(c) is plainly

directed to the court of appeals.  *See United States v. Meister*, 744 F.3d 1236, 1237–38

(11th Cir. 2013) (noting that each of the other eight circuits that has considered whether

or not district courts have the authority to apply § 3145 have found that they do); *see*

*also, e.g.*, *United States v. Christman*, 596 F.3d 870, 871 (6th Cir. 2010) (finding that a

district court has authority to make a section 3145(c) determination); *United States v.*

*DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (same); *United States v. Harris*, No. 19-cr-

356, 2020 WL 1503444, at *3 (D.D.C. Mar. 27, 2020) (same).[5]

Second, when determining whether or not Wiggins satisfies "the conditions of

release set forth in section 3143(a)(1)" for section 3145(c) purposes, the Court must

evaluate the record facts in light of the four dangerousness and flight-risk factors that

---

[5] The first half of section 3145(c) "provide[s] for immediate appellate review of the detention decision[.]" *Salerno*, 481 U.S. at 752; *see also* 18 U.S.C. § 3145(c) (stating that "[a]n appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title").  But Congress enacted this part of section 1345(c) more than five years prior to language concerning the release of a mandatorily detained defendant.  *See* 136 Cong. Rec. 36750 (daily ed. Oct. 27, 1990) (adding the release provision to section 3145(c) as part of the Crime Control Act of 1990).  This later amendment appears to have derived from a particular concern that the Department of Justice had about the need for certain defendants who faced mandatory detention under section 3143(a)(2) to be permitted to remain out of jail pending sentencing under exceptional circumstances, *see* Letter from Carol T. Crawford, Assistant Att'y Gen, Office of Legal Affairs, Dep't of Justice, to Paul Simon, U.S. Senator (July 26, 1989)—a type of judgment call that is ordinarily in the purview of the district judge who is presiding over the defendant's case.  And the legislative history of the 1990 amendment further indicates that the second half of section 3145(c) includes district court judges, insofar as an early draft of this amendment granted authority to release defendants specifically to "a court of appeals or a judge thereof," 135 Cong. Rec. 22940 (daily ed. Oct. 3, 1989), but the provision that was eventually enacted uses the broader, statutorily defined term "the judicial officer[,]" *see* 18 U.S.C. § 1345(c).

Congress has prescribed in 18 U.S.C. §3142(g). This is because section 3145(c) specifically references section 3143(a)(1), which, in turn, cross-references the modes of releasing a defendant set forth in 18 U.S.C. §§ 3142(b) and (c). And it is well established that "[t]he factors that the court uses to determine 'whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community' under §§ 3142(b) and (c) are provided in § 3142(g)." *United States v. Hawkins*, No. 2:10-cr-458, 2013 WL 1500376, at *1 (E.D. Cal. Apr. 10, 2013) (quoting 18 U.S.C. § 3143(a)(1)); *see also Weekes*, 2013 WL 6571598, at *1 ("To determine whether a defendant subject to § 3143 poses a risk of flight or danger, the court may consider the factors set forth in § 3142(g)."); *United States v. Tann*, No. 04-cr-392, 2006 WL 1313334, at *4 (D.D.C. May 12, 2006) (same).

Third, and finally, with respect to the requirement of "exceptional reasons why [the defendant's] detention would not be appropriate," it is obvious that "a plain reading of the statute offers little if any help[,]" *United States v. Garcia*, 340 F.3d 1013, 1016–17 (9th Cir. 2003), and, unfortunately, the legislative history is also "sparse and uninformative[,]" *DiSomma*, 951 F.2d at 497. Congress did not define the term "exceptional reasons" in the statute, nor did it provide examples, so, naturally, courts have laid out their own standards. *See, e.g.*, *Garcia*, 340 F.3d at 1018 (explaining that, when evaluating a release motion under section 3145(c), a "court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant" pending sentencing); *United States v. Larue*, 478 F.3d

924, 925 (8th Cir. 2007) (defining "exceptional" under § 3145(c) as "clearly out of the ordinary, uncommon, or rare.").  By adopting the term "exceptional reasons" but declining to define it, it appears that "Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct." *Garcia*, 340 F.3d at 1018 (internal quotation marks and citation omitted).  And to the extent that Congress requires a determination of whether "there are exceptional reasons why *such person's* detention would not be appropriate," 18 U.S.C. § 3145(c) (emphasis added), it would also seem as though the required exceptional reason must be particular to the defendant who is requesting release notwithstanding the fact that he is subject to mandatory detention.  *Cf. United States v. Lee*, No. 19-cr-298, 2020 WL 1541049, at *4 (D.D.C. Mar. 30, 2020) (asking, in the context of a pretrial detainee's request for release pursuant to section 3142(f), whether "COVID-19 pandemic has any material impact on the section 3142(g) factors that led [the Magistrate Judge] to determine that pretrial detention was warranted in [the defendant's particular] case.").

### III.

Given these statutory standards, Wiggins has an uphill battle with respect to establishing that he can be, and should be, released from detention under section 3145(c), even if the Court assumes—without deciding—that the COVID-19 pandemic qualifies as an "exceptional reason[]" for concluding that Wiggins's detention is "not . . . appropriate." 18 U.S.C. § 3145(c).  This is primarily because, as explained above, Wiggins also has to demonstrate that he "meets the conditions of release" in section 3143(a)(1), and in the context of the government's appeal of Magistrate Judge Harvey's

detention order, this Court already specifically determined that Wiggins's release poses a danger to the safety of the community, pursuant to 18 U.S.C. § 3142(g). Thus, it appears that Wiggins's only hope of demonstrating, by clear and convincing evidence, that he meets the conditions of release for section 3145(c) purposes *now*, when this Court previously and unfavorably assessed the detention issue *then*, is to show that circumstances have changed, or that newly relevant evidence sheds different light on the factors at issue, in a manner that compels a different conclusion about his dangerousness than this Court reached before. *Cf. id.* § 3142(f). For the reasons explained below, Wiggins's motion falls short of meeting this mark.

First of all, defense counsel's contention that "the nature of the offense is a little less serious than it was at the time of the detention hearing" because Wiggins has now pled guilty to a less serious crime from a sentencing standpoint (*see* Def.'s Reply at 9 (citing to 18 U.S.C. § 3142(g)(1))) is unpersuasive. It is well established that the statute of conviction alone does not establish the seriousness of an offense. And Wiggins has now freely and fully admitted to playing a substantial role in a conspiracy to distribute at least 100 grams of heroin, and also to possessing various items indicative of unlawful and dangerous conduct, including firearm magazines and high-caliber ammunition. (*See* Stmt. of the Offense at 4.) It is true that a mandatory minimum penalty no longer applies to Wiggins conduct by virtue of the particular offense to which Wiggins has pled guilty, but in this context, that is neither here nor there, because Wiggins's own admissions regarding his active and willful participation in inherently dangerous criminal conduct plainly weighs in favor of his continued detention for the purpose of 18 U.S.C. § 31342(g)(1).

With respect to the weight of the evidence against Wiggins, *see* 18 U.S.C. § 3142(g)(2), this factor, too, weighs in favor of detention, and perhaps even more so now than before. By entering a guilty plea, Wiggins has knowingly and voluntarily admitted that he engaged in serious and unlawful behavior concerning heroin trafficking, which is certainly strong and incontrovertible evidence that he has, in fact, committed the charged crime. Defense counsel's suggestion that this weight-of-the-evidence analysis now relates "only" to an assessment of record evidence concerning "the likelihood that the person will fail to appear or will pose a danger" (Def.'s Reply at 10 (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985))) finds no support in this jurisdiction. *See, e.g.*, *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018) (explaining that "the weight of the evidence factor" does not focus "on the defendant's danger to the community . . . to the exclusion of any consideration of the strength of the government's case"); *see also United States v. Ausby*, No. 72-cr-67, 2019 WL 2452988, at *4 n.1 (D.D.C. June 11, 2019) (same). Nor could it, given that the "relevant statutory language does not focus on the evidence of danger to the community . . . ; rather, it requires that the judicial officer consider 'the weight of the evidence *against the person*[.]'" *Taylor*, 289 F. Supp. 3d at 66 (emphasis in original) (quoting 18 U.S.C. § 3142(g)(2)).

As a general matter, and as this Court noted during the pretrial detention hearing, Wiggins's "history and characteristics" do weigh in favor of his release, 18 U.S.C. § 3142(g)(3), and defense counsel here again stresses Wiggins's "longstanding ties to the D.C. area[,]" his "strong family and community support[,]" and his recent history of employment (Def.'s Reply at 10–11). This Court previously credited these

characteristics; yet, it determined nevertheless that they were insufficient to tip the balance in favor of Wiggins's release. (*See* Detention Review Hr'g at 14 (concluding that "this factor ultimately does not and cannot outweigh the considerations about the nature of the offense and the weight of the evidence against Mr. Wiggins as far as drug dealing is concerned").) And COVID-19 appears to have no impact on this equation under the circumstances presented here. Wiggins has not demonstrated, for example, that he has an "underlying medical condition[] that make[s] [him] especially vulnerable to the virus[,]" *Lee*, 2020 WL 1541049, at *6, which might reasonably cause a court to reevaluate the "history and characteristics" factor and reach a different result with respect to the detention calculus, *see, e.g., United States v. Davis*, No. 19-cr-292, ECF No. 157 at 2–3 (D.D.C. Apr. 6, 2020) (ordering the temporary release of a pretrial detainee who "is currently suffering from acute bronchitis and taking five medications, including albuterol and prednisone, a corticosteroid that is an anti-inflammatory and immunosuppressant"). Here, the defense has not provided the Court with any basis for concluding that this third factor should be afforded any greater weight now than the Court gave it during its earlier review of Wiggins's detention status.

Rather, Wiggins's motion mostly points to the fourth and final factor and vigorously maintains that "the nature and seriousness of the danger to any person or the community that would be posed by [his] release," 18 U.S.C. § 3142(g)(4), now weighs heavily against his continued detention, insofar as "it is the incarceration that is dangerous in the context of the COVID-19 pandemic[,]" and Wiggins's "release under house arrest until the global pandemic abates will actually enhance the safety of the community" (Def.'s Reply at 11). This contention cannot be credited consistent with

the statutory framework, for the reasons that this Court recently explained in *Lee*. For one thing, "accepting this argument would require the Court to ignore the fact that the relevant statutory inquiry is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial) . . . [but] '*the danger*' that 'would be posed *by the person's release*.'" *Lee*, 2020 WL 1541049, at *5 (quoting 18 U.S.C. § 3142(g)(4)). And, just as in *Lee*, Wiggins has not shown, by clear and convincing evidence or otherwise, that, if he is released, he would not engage in the same kinds of inherently dangerous and illegal activities that gave rise to his conviction in this case. (*Cf.* Detention Review Hr'g at 15 (noting specifically that Wiggins had "used a cellphone to arrange drug sales[,]" and rejecting release partly because this "is not the kind of conduct that is amenable to effective supervision").) Furthermore, it is significant that Wiggins's established offense conduct spanned many months and was only revealed after extensive investigation by law enforcement. Thus, it is also clear to this Court that the potential danger posed by Wiggins's release in the age of COVID-19 includes the heightened safety concerns that might exist for "the probation officers who would be tasked with monitoring his behavior while he is out of jail" pending sentencing. *Lee*, 2020 WL 1541049, at *5.

In short, and unfortunately for Wiggins, even if the COVID-19 pandemic rises to the level of an "exceptional reason[]" for releasing him pending sentencing under section 3145(c), the law authorizes such release only if Wiggins "meets the conditions of release set forth in section 3143(a)(1)," 18 U.S.C. § 3145(c), and for the reasons explained above, this Court cannot conclude that Wiggins has shown "by clear and

convincing evidence" that the Court's previous specific assessment of his dangerousness leads to a different result today, such that he "meets the conditions of release set forth in section 3143(a)(1)" as section 3145(c) requires, *see id.* §§ 3143(a)(1), 3145(c).

## IV.

This Court's conclusion that Wiggins has not satisfied the prerequisites of section 3145(c) is all that is required to resolve the pending emergency motion for release. Although Wiggins also appears to request release under 18 U.S.C. § 3142(i) (*see* Def.'s Reply at 12), such reliance is misplaced under the circumstances presented here. *See United States v. Goldman*, No. 19-cr-0263, 2020 WL 1547380, at *2 (D. Minn. Apr. 1, 2020) (noting that applying section 3142(i) to detainees awaiting sentencing would "ignore[] [their] adjudication of guilt" and also result in the "application of the less stringent legal standard that applies to pretrial release"); *see also United States v. McDuffie*, No. 19-cr-212, 2020 WL 1659879, at *1 (S.D.N.Y. Apr. 3, 2020) ("Although defense counsel brings this motion pursuant to 18 U.S.C. § 3142(i), which allows for temporary pretrial release for a compelling reason, the motion is governed by 18 U.S.C. § 3145(c), which applies when a defendant is awaiting sentencing.").

Nor can Wiggins credibly suggest that he should be released because his continued detention is fundamentally unfair, in violation of his Fifth Amendment rights or otherwise. (*See* Def.'s Mot. at 12.) The crux of Wiggins's argument in this regard appears to be that "[t]he Due Process Clause of the 5th Amendment protects against unnecessary [sentencing] delays" and also that, as a matter of procedural fairness, "the Court should order temporary release because it is necessary for the continued

preparation of his defense for sentencing in a timely manner." (Def.'s Reply at 13 (internal quotation marks and citations omitted).) Wiggins has waived any constitutional claim concerning the right to a speedy sentencing as part of his plea agreement (*see* Plea Agreement, ECF No. 90 at 7), and this aspect of his Due Process Clause argument also fails on its merits, because Wiggins's sentencing date has not changed: it remains slated for June 11, 2020—a date that was selected *with the consent of the parties* during the plea hearing on March 2, 2020, before the COVID-19 outbreak in D.C. Jail, due to the amount of time that is necessary for the Probation Office to compile a presentence report. (*See* Minute Entry of Mar. 2, 2020.) *See also United States v. Lovasco*, 431 U.S. 783, 790 (1977) (explaining that, in order to determine whether a defendant has been deprived of his due process right to a prompt sentencing, the Court "must consider [1] the reasons for the delay as well as [2] the prejudice to the accused").

To the extent that defense counsel suggests that procedural fairness to Wiggins requires that he be released in order to aid in the preparation of his defense, that argument fares no better. The scope of Wiggins's defense at this point is quite limited, since he has already entered a guilty plea, and his sentencing date is not sufficiently imminent to warrant temporary release on the grounds that he needs to prepare. *Cf. United States v. Villegas*, No. 2:19-cr-568, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020) ("If federal courts had to order temporary release just because it would aid a defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders."); *United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (finding that, where a hearing on alleged violation of supervised release was scheduled for the following week and legal visits to jail had been suspended, the temporary release of a pretrial defendant who is otherwise

unable "to prepare his defenses" was warranted).

**V.**

In conclusion, the Court fully acknowledges the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks that it presents for *all* of us, including, and perhaps especially, those individuals who are unfortunately presently detained in federal custody. The conditions of detention within the District of Columbia's correctional facilities are currently being assessed, *see Banks v. Booth*, No. 20-cv-849 (D.D.C. Mar. 30, 2020), as they should be, given the alarming rate at which individuals who are in D.C. DOC custody are now contracting the virus. In the meantime, however, "Congress has given judges only limited tools" to address the requested release of individual detainees. *United States v. Nkanga*, No. 18-cr-713, 2020 WL 1529535, at *4 (S.D.N.Y. Mar. 31, 2020). It is crystal clear that "[t]he dangers of the moment . . . call for more systematic action than a judge can grant in any one case[,]" and that "[o]nly the political branches can do what this moment requires[.]" *Id.* at *3. But, at present, it falls to the courts to determine, on an ad hoc, case-by-case basis, whether each detained defendant who files a motion for release on the basis of COVID-19 can be let out jail consistent with the dictates of the law.

In the instant case, as the law currently stands, this Court is called upon to evaluate the release motion of a healthy and relatively young detainee who is in D.C. Jail mandatorily because he has pled guilty to serious and dangerous criminal conduct. This Court previously and carefully determined that no conditions of release could assure the safety of the community if this individual is not held in custody, and the generalized risks that the COVID-19 pandemic poses for residents of the D.C. Jail do not impact the Court's prior considered analysis of his dangerousness. Under these

circumstances the Court cannot find that Wiggins is a person who "meets the conditions of release set forth in 3143(a)(1)" as a threshold matter.  *See* 18 U.S.C. § 3145(c). Therefore, it is hereby

   **ORDERED** that the pending emergency motion (*see* ECF No. 95) is **DENIED**.


Date:  April 10, 2020

                                        *Ketanji Brown Jackson*
                                        KETANJI BROWN JACKSON
                                        United States District Judge